FILED BY ____ D.C.

JUN 25 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF FLORIDA

Jarred Hyde,

Plaintiff,

vs.

The City of Hollywood Florida, Officer Vincent Benincasa, Officer Taylor Cutler, Officer Kellie Simmons, Officer Michael Kirkland, Sergeant Mark Alford, John Doe (Hollywood EMT/ Paramedic),

Defendants.

Civil Action No. _____

COMPLAINT FOR DAMAGES UNDER 42 U.S.C. § 1983

JURY TRIAL DEMANDED

## I. JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. § 1983 for violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution.
2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.
3. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to these claims occurred within the Southern District of Florida.

## II. PARTIES

4. **Plaintiff Jarred Hyde** is a United States citizen residing outside the state of Florida.

1

5. **Defendant City of Hollywood** is a Florida municipality responsible for the policies, practices, and customs of the Hollywood Police Department.

6. **Defendant Officer Vincent Benincasa** is, and at all relevant times was, a police officer employed by the Hollywood Police Department, acting under color of state law and within the scope of his official duties.

7. **Defendant Officer Taylor Cutler** is, and at all relevant times was, a police officer employed by the Hollywood Police Department, acting under color of state law and within the scope of his official duties.

8. **Defendant Officer Kellie Simmons** is, and at all relevant times was, a police officer employed by the Hollywood Police Department, acting under color of state law and within the scope of her official duties.

9. **Defendant Officer Michael Kirkland** is, and at all relevant times was, a police officer employed by the Hollywood Police Department, acting under color of state law and within the scope of his official duties.

10. **Defendant Sergeant Mark Alford** is, and at all relevant times was, a police officer employed by the Hollywood Police Department, acting under color of state law and within the scope of his official duties.

11. **Defendant John Doe** is an unidentified paramedic who responded to the scene during Plaintiff's arrest and acted under color of state law. Plaintiff will amend this complaint upon learning his true name.

## III. STATEMENT OF FACTS

12. On the night of June 29, 2023 at approximately 11:24 PM, Plaintiff Jarred Hyde returned from the store to his residence on Dewey Street in Hollywood, Florida.

13. Upon noticing police activity near 1706 Dewey Street, Plaintiff left his groceries across the street from his home and walked down the block to observe the scene.

14. Plaintiff saw three unoccupied, marked police vehicles with no visible officers in the immediate vicinity. He remained on a public sidewalk at all times.

15. Plaintiff was recording with a personal body camera and used his cellphone to zoom in on the CAD report visible through the driver's side window of a patrol vehicle

16. Within moments, Defendant Officers Vincent Benincasa, Michael Kirkland, Taylor Cutler, and Kellie Simmons approached Plaintiff aggressively, with Defendant Kirkland pointing his firearm at Plaintiff, while shouting commands such as "Hands! Don't do anything!"

17. Plaintiff raised his hands and calmly asked if he had done anything illegal. Defendant Benincasa responded, "You're just looking inside of our car," and immediately declared, "I'm patting you down."

18. Without legal justification, Defendants Benincasa and Kirkland grabbed Plaintiff, forced him to the ground, and conducted a frisk. No weapons or contraband were found.

19. Defendant Benincasa demanded Plaintiff's identity. When Plaintiff declined, citing his constitutional rights, Benincasa handcuffed him and stated he would be taken to jail unless he complied.

20. Plaintiff ultimately gave his name and date of birth under duress. Defendant Benincasa proceeded to empty Plaintiff's pockets and searched him again against a patrol car.

21. Plaintiff warned officers that they were violating his Fourth Amendment rights. Defendant Simmons replied, "You looked into my car," attempting to justify the arrest.

22. Officers then disabled their body-worn camera (BWC) microphones. After muting their audio, Defendant Benincasa was recorded on Plaintiff's body cam stating: "He's an agitator. He saw us here and wanted to come stir shit up, which is fine—we have plenty."

23. Plaintiff's body cam was then turned off by Defendant Cutler.

24. While Plaintiff remained handcuffed in a patrol car with the windows up and no A/C, he requested water several times but was ignored. He remained in the car for over 90 minutes until being transported to the hospital.

25. At approximately 11:44 PM Sergeant Mark Alford arrived on scene. He was informed of the events and backed his officers' actions without conducting an independent inquiry.

26. Defendant Benincasa informed Plaintiff he was being charged with "Loitering or

3

Prowling" under Florida Stat. § 856.021 and stated he could be released with a citation if he provided a local address.

27. Plaintiff reminded officers he had already provided his name and DOB. Plaintiff recited his name and DOB to Sergeant Alford, reminding him they were violating Plaintiff's rights.

28. The officers continued muting or disabling their BWCs throughout the interaction.

29. At approximately 12:00 AM, EMTs arrived. When Plaintiff explained he had sustained injuries after being tackled, Defendant John Doe mocked him, saying, "You wanted a fucking ambulance for that?"

30. Bandages were slapped on Plaintiff's knees, and Defendant John Doe hesitated to document Plaintiff's injuries after a conversation with Defendant Simmons. Officer Simmons was heard stating "That's why we're fucking taking him."

31. Sergeant Alford again offered to release Plaintiff if he gave a local address, but Plaintiff, fearing further retaliation, provided only a mailing address.

32. At 12:46 AM, Plaintiff was transported to the hospital by Defendant Benincasa, where he was treated for a sprained muscle and rotator cuff injury.

33. Defendants fully disabled their BWCs from 1:09 AM to 1:37 AM and again from 1:55 AM to 2:55 AM. During that time, Defendant Benincasa belittled Plaintiff and mocked his injuries.

34. Plaintiff was booked into Broward County Jail at 3:17 AM and released approximately seven hours later. No bail was required and no local address was requested by the jail.

35. Plaintiff later reviewed the arrest report and identified multiple false statements made by Defendant Benincasa, contradicted by Plaintiff's audio and video recordings.

36. Plaintiff was initially charged with loitering or prowling Fla. Stat. § 856.021 and resisting an officer without violence Fla. Stat. § 843.02.

37. Following Plaintiff's arrest the State Attorney for Broward County declined to file charges for loitering or prowling in alleged violation of Fla. Stat. § 856.021. The remaining charges were dismissed via nolle prosequi on September 5, 2024,

4

before Judge Robert F. Diaz in Broward County Circuit Court. As a result, all criminal charges arising from the June 29, 2023 incident were terminated in Plaintiff's favor.

## IV. CLAIMS FOR RELIEF

### Claim I – First Amendment Retaliation

### (Against Defendants Benincasa, Kirkland, Cutler, and Simmons)

38. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

39. Defendants Benincasa, Kirkland, Cutler, and Simmons, acting under color of state law, retaliated against Plaintiff for engaging in protected expressive conduct–namely, recording police officers in public, a right clearly established under the First Amendment.

40. In retaliation for this constitutionally protected activity, Defendants subjected Plaintiff to physical harm, unlawful detention, arrest, and fabricated criminal charges.

41. Defendants' actions would chill a person of ordinary firmness from continuing to engage in similar protected conduct.

42. As a direct and proximate result of Defendants' unlawful and retaliatory conduct, Plaintiff suffered lasting physical limitations, loss of liberty, emotional distress, reputational harm, and other compensable injuries.

### Claim II – Fourth Amendment: Unlawful Seizure and Arrest Without Probable Cause

### (Against Defendants Benincasa, Kirkland, Cutler, and Simmons)

43. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

5

44. Defendants Benincasa, Kirkland, Cutler, and Simmons, acting under color of state law, unlawfully seized and arrested Plaintiff without a warrant, probable cause, or reasonable suspicion.

45. At no point did Plaintiff commit a crime, pose a threat, or engage in conduct that would justify a stop, detention, or arrest under the Fourth Amendment.

46. Defendants lacked any specific, articulable facts to support an investigatory stop under Terry v. Ohio, or to justify a custodial arrest under the Fourth Amendment.

47. As a direct and proximate result of this unlawful seizure and arrest, Plaintiff suffered loss of liberty, physical discomfort, emotional distress, reputational harm, and other compensable damages.

## Claim III – Fourth Amendment: Malicious Prosecution

## (Against Defendants Benincasa, and Alford)

48. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

49. Defendants Benincasa and Alford, acting under color of state law, initiated and continued criminal proceedings against Plaintiff by pursuing charges of loitering or prowling and resisting without violence, without probable cause and with malice.

50. These charges lacked any factual basis and were pursued for improper purposes, including to justify Plaintiff's unlawful arrest and retaliate against his constitutionally protected conduct.

51. The prosecution terminated in Plaintiff's favor when all charges were dismissed via *nolle prosequi*.

52. As a direct and proximate result of this malicious prosecution, plaintiff suffered a deprivation of liberty, emotional distress, reputational harm, and other compensable damages, in violation of his Fourth Amendment rights.

## Claim IV – Fourth Amendment: Unlawful Search and Excessive Force
## (Against Defendants Benincasa and Kirkland)

6

53. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

54. On June 29, 2023, Defendants Benincasa and Kirkland, acting under color of state law, subjected Plaintiff to a pat-down and full-body search without a warrant, probable cause, or any lawful justification.

55. Defendant Benincasa falsely claimed in the arrest report that Plaintiff had his hands in his pockets and that he feared Plaintiff was about to commit an act of violence toward an officer inside the police vehicle. In reality, no officers were inside the vehicle at the time, and body-worn camera footage and audio evidence contradict this justification.

56. Plaintiff was unarmed, was not resisting, and posed no threat to officer safety or public safety at the time of the encounter.

57. Despite this, Defendant Benincasa–assisted or observed by Defendant Kirkland – violently threw Plaintiff to the ground without provocation.

58. The force used was objectively unreasonable under the circumstances and disproportionate to any perceived or alleged threat.

59. As a direct and proximate result of the unlawful search and excessive force, Plaintiff suffered physical pain, ongoing mobility limitations, emotional distress, and other compensable harms, in violation of his Fourth Amendment rights.

## Claim V – Fourteenth Amendment: Conditions of Confinement / Denial of Medical Care

## (Against Defendants Benincasa, Simmons, Alford, Kirkland, Cutler, and John Doe EMT)

60. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

61. After Plaintiff was placed under arrest, Defendants Benincasa, Simmons, Alford, Cutler, and Kirkland confined him in a sealed police vehicle for an extended period in high heat, while handcuffed and without access to water or ventilation, despite obvious signs of distress

62. Defendant John Doe, a paramedic employed by or contracted with the City or Broward County, responded to the scene after Plaintiff reported injuries including back pain, a twisted ankle, abrasions to both knees and other physical pain caused by officers throwing him to the ground.

63. Instead of providing necessary medical treatment or willingness to properly document Plaintiff's injuries, John Doe minimized Plaintiff's complaints and acted in concert with the arresting officers to avoid generating an official incident report, despite clear signs of injury.

64. Defendant Doe's failure to conduct a full assessment, and the deliberate denial of medical care by all Defendants–both police and paramedic–was done with knowledge of Plaintiff's condition and with conscious disregard for his health and safety.

65. As a result of these actions, Plaintiff suffered physical pain, dehydration, emotional distress, and other harms, in violation of his due process rights under the Fourteenth Amendment.

## Claim VI – Fourteenth Amendment: Fabrication of Evidence

## (Against Defendant Benincasa)

66. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

67. Defendant Benincasa knowingly included materially false statements in the arrest affidavit, including fabrications about Plaintiff's posture, intent, resistance, and interactions with officers.

68. These statements were contradicted by audio and video evidence, including body-worn camera footage, Plaintiff's own audio/video recordings, and other objective sources.

69. Defendant Benincasa made these statements with the intent to justify Plaintiff's unlawful arrest and prosecution, and to conceal the absence of probable cause.

70. This fabrication of evidence violated Plaintiff's clearly established due process rights under the Fourteenth Amendment and was a direct cause of Plaintiff's continued detention and emotional suffering.

## Claim VII – Monell Liability – Municipal Policy, Practice, or Custom

### (Against Defendant City of Hollywood)

71. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

72. Defendant City of Hollywood is a municipality organized under the laws of the State of Florida. It is responsible for the policies, practices, supervision, training, and conduct of the Hollywood Police Department and its officers, including Defendants Benincasa, Cutler, Simmons, Kirkland, and Alford.

73. The constitutional violations described herein–including unlawful detention, warrantless search and arrest, use of excessive force, denial of medical care, fabrication of evidence, malicious prosecution, and retaliation for protected expressive conduct–were not isolated or unauthorized acts. They were carried out pursuant to, and reflective of, the City's policies, customs, and longstanding practices.

74. These unlawful acts were enabled by the City's failure to properly hire, train, supervise, discipline, or terminate officers who routinely violate citizens' constitutional rights, particularly in response to citizens who document police activity.

75. Upon information and belief, the City of Hollywood has maintained and tolerated the following unconstitutional policies, customs, or practices:

    a. Failing to adequately train officers in the lawful limits of stop-and-frisk, use of force, and First Amendment protections;

    b. Encouraging or condoning the use of excessive force and fabrication of charges to justify unlawful conduct;

    c. Permitting officers to retaliate against individuals for lawfully recording or criticizing police activity;

    d. Ignoring complaints of officer misconduct by routing civilian complaints back to the officers being accused;

    e. Refusing to investigate, discipline, or retrain officers known to engage in misconduct;

9

f. Obstructing the public's right to access records and accountability by withholding public information and shielding the identities of involved personnel;

g. Failing to ensure access to medical treatment for individuals injured in police custody.

h. Engaging in a pattern of targeting Plaintiff with repeated arrests without probable cause, all of which resulted in dismissals.

76. Following Plaintiff's arrest, he contacted the Chief of Police to report misconduct. Rather than initiate an independent review, the Chief referred Plaintiff back to Defendant Sergeant Alford–one of the very officers involved in the misconduct. When Plaintiff later contacted the new Chief, his outreach was ignored entirely. Plaintiff also reached out to the Mayor of Hollywood who never directly responded and whose secretary/assistant never followed through on addressing concerns.

77. Plaintiff requested the name of the paramedic who refused to treat his injuries, believing the individual acted in coordination with police to avoid filing a report. Despite confirming that a report exists, Fire Chief Jeffery Levy of Hollywood Fire-Rescue & Beach Safety, who is also their Public Information Officer, refused to provide the EMT's identity without requiring unnecessary and unlawful bureaucratic steps, contrary to Florida's public records laws.

78. These post-incident efforts to suppress, conceal, and deflect accountability reflect an institutional policy of non-transparency and deliberate indifference to civil rights violations perpetrated by City personnel.

79. As a direct and proximate result of the City's policies, practices, and failures, Plaintiff suffered violations of his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, including unlawful seizure, excessive force, retaliatory arrest, fabrication of evidence, denial of medical care, and deprivation of liberty.

80. In addition to the incident described above, Plaintiff was arrested by officers of the Hollywood Police Department on two subsequent occasions, both of which also lacked probable cause and were ultimately dismissed by the prosecuting

10

authority. These repeated and unfounded arrests underscore the existence of a continuing pattern of retaliatory and unconstitutional policing practices directed at Plaintiff, and tolerated by the City of Hollywood.

81. Plaintiff continues to experience physical limitations, emotional distress, reputational harm, and other compensable damages as a result of these constitutional violations.

## V. Qualified Immunity Considerations

82. Plaintiff alleges that Defendants Benincasa, Cutler, Simmons, and Alford are not entitled to qualified immunity. These defendants, acting under color of law, violated Plaintiff's clearly established rights under the First, Fourth, and Fourteenth Amendments. No objectively reasonable officer would believe their actions were lawful under the circumstances.

83. Officer Benincasa spearheaded the unlawful detention and search of Plaintiff absent probable cause or reasonable suspicion, compelled identification in violation of clearly established rights, and fabricated the basis for Plaintiff's arrest. He also seized Plaintiff's personal items and subjected him to excessive force, and engaged in retaliatory conduct for filming public officials.

84. Officer Cutler participated in the unlawful seizure and suppression of evidence by disabling Plaintiff's body-worn camera and muting or deactivating his own. His conduct further enabled other constitutional violations and obstructed the creation of an accurate record of the incident.

85. Officer Simmons mocked Plaintiff's request for medical assistance, coordinated with EMTs to avoid documentation of Plaintiff's injuries, and participated in unconstitutional detention and retaliation.

86. Sergeant Alford arrived on scene, was briefed on the facts, and nonetheless failed to intervene or correct his subordinates' unlawful behavior. His supervisory role and affirmative ratification of the conduct renders him equally liable.

87. The conduct of each of these defendants violated clearly established rights that a reasonable officer would have understood, including: (1) the right to be free from unreasonable searches and seizures; (2) the right not to be arrested without

probable cause; (3) the right to record police in public spaces; and (4) the right to humane treatment during pretrial detention. Accordingly, Defendants are not entitled to qualified immunity for their actions.

88. While Officer Kirkland also muted his body-worn camera at points and failed to intervene against other officers' conduct, Plaintiff acknowledges limited actions by Kirkland which appeared intended to mitigate harm — including rolling down the vehicle window to provide air and opposing the EMT's refusal to document injuries. As such, Plaintiff does not, at this stage, seek to strip qualified immunity from Officer Kirkland. This strategic choice reflects a nuanced evaluation of the facts and is not a concession that other similarly situated officers are necessarily entitled to immunity.

## VI. RELIEF REQUESTED

89. Enter judgment in favor of Plaintiff and against all Defendants;

90. Award compensatory damages in an amount to be determined at trial for physical pain, emotional distress, reputational harm, loss of liberty, and continued suffering caused by Defendants' unconstitutional conduct;

91. Award punitive damages against the individual Defendants in an amount sufficient to punish their malicious and reckless disregard for Plaintiff's rights and to deter similar misconduct in the future;

92. Enter a declaratory judgment stating that the actions of the Defendants violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution;

93. Award reasonable costs and expenses, including attorney's fees under 42 U.S.C. § 1988;

94. Grant such other and further relief as the Court deems just and proper, including any relief necessary to prevent future violations of constitutional rights by the City of Hollywood and its agents.

## VII. JURY DEMAND

95. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: _6-23-2025_

Signature: _____

Jarred Hyde

2232-3 S Nellis BLVD #126

Las Vegas NV 89104

JarredHyde89@gmail.com

# EXHIBIT A – STATEMENT OF DAMAGES

I, Jarred Hyde, respectfully submit this Statement of Damages in support of my civil rights complaint pursuant to 42 U.S.C. § 1983, arising from events that occurred on June 29–30, 2023, in Hollywood, Florida.

As a result of the unconstitutional and retaliatory actions of the individual defendants and the City of Hollywood Police Department, I experienced severe emotional, physical, and economic harm. These damages are ongoing and substantial.

1. **Emotional Distress and Mental Anguish**
I suffered extreme psychological and emotional trauma as a direct result of being wrongfully detained, handcuffed, assaulted, and incarcerated. I experienced a constant fear that the officers involved would retaliate against me for exercising my First Amendment rights. This fear forced me to quit my job, leave my home, and ultimately relocate out of state. The psychological toll of these events resulted in significant weight loss — I lost approximately 40 pounds — and countless sleepless nights.

2. **Physical Pain and Medical Harm**
I sustained physical injuries when officers violently threw me to the ground and detained me. I was later diagnosed with a sprained muscle and rotator cuff injury. I also suffered bloodied and bruised knees. These injuries required medical attention and caused both immediate and ongoing pain, as well as limitations in my daily functioning, which continue to affect me.

3. **Unlawful Detention and Humiliation**
I was unlawfully detained for several hours, left in a hot police car with the windows rolled up and no air conditioning, and repeatedly denied water despite asking for it several times. I was mocked and belittled during transport and confinement. This experience caused both physical suffering and emotional humiliation.

4. **False Charges and Legal Burden**

14

The charges filed against me — "loitering or prowling" and "resisting without violence" — were baseless and fabricated. These charges were later dropped by the prosecution. Nonetheless, I was forced to retain legal counsel and defend myself against a prosecution that never should have occurred–one which dragged on for over a year causing prolonged stress, anxiety, depression, and financial hardship.

5. **Loss of Employment and Life Disruption**
As a direct result of this incident and the subsequent fear of retaliation, I was forced to leave my job and move out of state. I experienced financial hardship, instability, and the disruption of my life and career.

**In light of the foregoing**, I respectfully request that the Court award compensatory and punitive damages appropriate to the proven injuries, and that a jury be permitted to determine the full extent of compensation warranted for the violations of my constitutional rights under the First, Fourth, and Fourteenth Amendments; for malicious prosecution; and for the psychological, physical, and economic harm I have endured and continue to suffer.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Respectfully submitted,

Jarred Hyde

Plaintiff, Pro Se

Date: ___6-23-2025___

15



Case 0:25-cv-61247-PAB Document 1 Entered on FLSD Docket 06/25/2025 Page 16 of 16

Visit **UPS.com**

**Apply shipping doc**

**Window En**

Use this envelope
or inkjet print

**Scan QR code to
schedule a pickup**

the following services: **UPS Nex**

**UPS Worl**

**UPS 2nd D**

**UPS Worl**

envelope for: **UPS Grou**

**UPS Stand**

**UPS 3 Day**

**Dome**
- To qu
corresp
8 oz. or le
or weighin

**International S**
- The UPS Express
value. Certain coun
ups.com/importexpc

- To qualify for the letter ra
UPS express envelopes we

**Note:** UPS Express envelopes are
electronic media containing sensitive
Do not send cash or cash equivalent.

UPS 2ND DAY AIR
TRACKING #: 1Z 4G 172 02 7497 8155
BILLING: P/P
2
FL 330-6-03
MIAMI FL 33128-1801
SHIP UNITED STATES DISTRICT COURT BN09
TO: 400 N MIAMI AVE
JARRED HYDE
(818) 661-0829
THE UPS STORE #7965
2323 S NELLIS BLVD
LAS VEGAS NV 89104-6229
0.3 LBS LTR 1 OF 1
DATE: WI: 23 JUN 2025

REC'D BY _____ D.C.
JUN 2 5 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**Serving you for more than 110 years**
United Parcel Service.®

**For information about UPS's privacy practices or t**
personal information, please see the UPS Privacy

010195103   05.21

International Shipping Notice — Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions established by the Convention for the Unification of Certain Rules Relating to International Carriage by Air (the "Warsaw Convention") and/or the Convention on the Contract for the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or software were exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.